EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| Dolores Reyes Santaella<br><br>Recurrida<br><br>v.<br><br>Omara Toledo Santana<br><br>Peticionaria | Certiorari<br><br>2025 TSPR 76<br><br>216 DPR ___ |

Número del Caso:  CC-2024-0490

Fecha:  29 de julio de 2025

Tribunal de Apelaciones:

    Panel VI

Representantes legales de la parte peticionaria:

    Lcda. Melissa Hernández Romero
    Lcdo. Javier A. Torres Rivera

Representante legal de la parte recurrida:

    Lcdo. Luis R. Santini Gaudier

Representantes legales del *Amicus Curiae:*

    Lcda. Luisselle Quiñones Maldonado
    Lcdo. Alejandro Figueroa Quevedo

Materia: Sentencia con opiniones de conformidad.

Este documento está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal Supremo. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Dolores Reyes Santaella<br><br>Recurrida<br><br>v.<br><br>Omara Toledo Santana<br><br>Peticionaria | CC-2024-0490 | Certiorari |

SENTENCIA

En San Juan, Puerto Rico, a 29 de julio de 2025.

Atendido el recurso de *certiorari* presentado por la parte peticionaria, el cual fue expedido el 6 de diciembre de 2024, se revoca el dictamen del Tribunal de Apelaciones. En consecuencia, se devuelve el caso al Tribunal de Primera Instancia con el único fin de que determine si las organizaciones sin fines de lucro que representan a la parte peticionaria están cubiertas por la Ley Núm. 81 de 26 de junio de 1964, conocida como *Ley para eximir a las personas que sean atendidas por las clínicas de asistencia legal de las escuelas de derecho de Puerto Rico del pago de toda clase de derechos, aranceles, contribuciones o impuestos*, 4 LPRA sec. 303a *et seq.*, o si cumplen con los requisitos para beneficiarse de la Ley Núm. 122 de 9 de junio de 1967, conocida como *Ley para eximir de toda clase de aranceles a la Corporación de Servicios Legales de Puerto Rico y otras entidades análogas*, 32 LPRA sec. 1500 *et seq.*[1] En caso contrario, el Tribunal de Primera Instancia deberá reexaminar la capacidad económica de la peticionaria para fines de considerar una exención de fianza en apelación. Esta determinación deberá emitirse en un término no mayor de

---

[1] Véase, *Reglamento para solicitar el certificado de exención en el pago de sellos, aranceles, contribuciones o impuestos de cualquier naturaleza requeridos en el trámite de procesos judiciales, certificaciones administrativas o en documentos notariales del Departamento de Justicia*, Reglamento Núm. 9537 de 1 de marzo de 2024.

diez (10) días a partir de la notificación de esta *Sentencia*.

Se ordena al Tribunal de Primera Instancia actuar conforme a lo aquí resuelto sin necesidad de esperar por nuestro mandato.

Lo acordó el Tribunal y certifica el Secretario del Tribunal Supremo. El Juez Asociado señor Estrella Martínez emitió una Opinión de conformidad a la cual se unieron la Jueza Presidenta Oronoz Rodríguez y el Juez Asociado señor Colón Pérez. El Juez Asociado señor Candelario López emitió una Opinión de conformidad. La Jueza Asociada Rivera Pérez no interviene.


                          Javier O. Sepúlveda Rodríguez
                          Secretario del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Dolores Reyes Santaella<br><br>Recurrida<br><br>v.<br><br>Omara Toledo Santana<br><br>Peticionaria | CC-2024-0490 | Certiorari |

Opinión de conformidad emitida por el Juez Asociado Señor ESTRELLA MARTÍNEZ, a la cual se unen la Jueza Presidenta ORONOZ RODRÍGUEZ y el Juez Asociado Señor COLÓN PÉREZ.

En San Juan, Puerto Rico, a 29 de julio de 2025.

En esta ocasión, debemos atender una situación que enfrentan varias organizaciones sin fines de lucro que prestan servicios a personas indigentes, ejemplificada en el caso y controversia que nos ocupa. Específicamente, este Tribunal debe intervenir con la desestimación de un recurso de apelación por una presunta falta de jurisdicción. Particularmente, nos corresponde evaluar si el Tribunal de Primera Instancia erró al imponer una fianza en apelación a una parte representada por entidades que proveen representación legal gratuita a personas de escasos recursos. En consecuencia, debemos considerar si el Tribunal de Apelaciones actuó incorrectamente al desestimar el

recurso apelativo basándose en que la peticionaria no consignó la fianza debido a su alegado estado de insolvencia.

Adelantamos que los hechos específicos del caso nos llevan a concluir que el foro apelativo intermedio erró al desestimar el recurso apelativo. Con este breve contexto en mente, procedemos a analizar los hechos que enmarcan esta controversia.

**I.**

El 19 de abril de 2024, la Sra. Dolores Reyes Santaella (señora Reyes Santaella o recurrida) presentó una *Demanda* de desahucio en precario contra la Sra. Omara Toledo Santana (señora Toledo Santana o peticionaria). En su escrito, alegó que el 15 de abril de 2023 firmó un contrato de arrendamiento mediante el cual alquiló a la peticionaria un inmueble de su propiedad, localizado en la urbanización Villa Carolina, Puerto Rico, por un período de un (1) año. Arguyó que el contrato venció el 15 de abril de 2024 y que, tras su vencimiento, la señora Toledo Santana permaneció en la propiedad de forma precaria y en contra de su voluntad expresa. A tales efectos, solicitó el desalojo de la peticionaria, así como el pago de honorarios legales ascendentes a $1,500.00, además de los gastos y costas del proceso. En apoyo a su reclamación, adjuntó una copia del contrato de arrendamiento.

El 30 de mayo de 2024, la peticionaria compareció representada por la Oficina Legal de la Comunidad Inc. (OLC)

y el Proyecto de Desarrollo Económico Comunitario y Derecho a la Ciudad (Proyecto DeCiudad), organizaciones que tienen un consorcio y prestan servicios conjuntamente con la Clínica de Asistencia Legal de la Facultad de Derecho de la Universidad Interamericana de Puerto Rico, y presentó una *Moción asumiendo representación legal y solicitud de desestimación*. En esencia, argumentó que la demanda debía desestimarse por falta de legitimación activa, debido a que la recurrida no había demostrado ser la propietaria del inmueble. Asimismo, arguyó que, aunque el contrato era por el término de un (1) año, este se había mantenido vigente, ya que continuó efectuando los pagos mensuales que fueron aceptados por la señora Reyes Santaella. Así, sostuvo que el contrato se había renovado mensualmente conforme a la doctrina de tácita reconducción. En respaldo a su solicitud, adjuntó copia de un correo electrónico en el que el abogado de la recurrida expresó que su representada no contaba con una escritura pública a su nombre respecto al inmueble en controversia y que se encontraba tramitando un expediente de dominio. También incluyó copias de pagos realizados a favor de la señora Reyes Santaella entre febrero y mayo de 2024.

Ese mismo día[1], la recurrida presentó una *Moción sometiendo testamento y certificación*, con el fin de

---

[1] Cabe señalar que, en la mañana del 30 de mayo de 2024, se celebró una vista de desahucio con la comparecencia de ambas partes. Los representantes legales de la peticionaria expusieron sus argumentos en apoyo a su solicitud de desestimación, mientras que el abogado de la recurrida

acreditar que el Sr. Felipe Castillo Lamboy le adjudicó, como parte del tercio de libre disposición, el inmueble objeto del contrato de arrendamiento. Además, alegó que había formado una comunidad de bienes con el causante, que fue designada su albacea universal y administradora de sus bienes, y que, desde su fallecimiento, había poseído el inmueble en calidad de dueña. Con base en estos señalamientos, afirmó que contaba con legitimación activa, por lo que la demanda no debía desestimarse bajo ese fundamento.

El 31 de mayo de 2024, el Tribunal de Primera Instancia emitió una *Resolución* en la que determinó que las alegaciones contenidas en la demanda y en las mociones eran suficientes para establecer una causa de acción válida. Asimismo, concluyó que la acción de desahucio constituía un acto de administración que no requería la concurrencia de todos los miembros de una sucesión. En consecuencia, declaró no ha lugar la solicitud de desestimación. A su vez, dictó una *Sentencia* mediante la cual declaró con lugar la demanda, ordenó el desalojo de la señora Toledo Santana en un plazo de treinta (30) días e impuso una fianza en apelación de $800.00.

---

presentó su oposición. Al concluir la vista, el foro primario se reservó el fallo e indicó que atendería las mociones que presentaron ambas partes y emitiría una determinación por escrito. Véase, *Minuta* de la vista celebrada mediante videoconferencia, Apéndice del recurso de certiorari de la peticionaria, pág. 102.

En igual fecha, la peticionaria presentó una *Moción de reconsideración a fijación de fianza en apelación*, en la que solicitó al foro primario que la eximiera del requisito de fianza debido a su condición de insolvencia. Señaló que, en *Crespo Quiñones v. Santiago Velázquez*, 176 DPR 408 (2009), el Tribunal Supremo reconoció que la insolvencia económica puede surgir del récord del caso, lo cual ocurría en este pleito. Lo anterior, debido a que estaba representada por la OLC y el Proyecto DeCiudad, iniciativas que ofrecen representación legal gratuita a personas de escasos recursos económicos. Por tanto, aseguró que estaba exenta del pago de la fianza en apelación.[2]

Por otro lado, el 7 de junio de 2024, la señora Toledo Santana acudió al Tribunal de Apelaciones mediante un *Escrito de apelación*. Como resultado de ello, el 10 de junio de 2024, el Tribunal de Primera Instancia emitió una *Orden* en la que dispuso la paralización de los procedimientos post-sentencia hasta que el foro apelativo intermedio emitiera su dictamen.

---

[2]En relación con esta moción, el 8 de julio de 2024 —luego de haberse presentado un recurso de apelación y emitido un *Sentencia* por parte del Tribunal de Apelaciones— el Tribunal de Primera Instancia dictó una *Resolución* en la que declaró no ha lugar la solicitud de reconsideración sobre la fijación de la fianza en apelación. Sustentó su determinación en que, dada la naturaleza sumaria de las acciones de desahucio, las mociones de reconsideración resultan improcedentes, ya que podrían extender los términos y, por ende, contravenir el principio de celeridad que caracteriza este tipo de procesos. Véase, *Resolución* del Tribunal de Primera Instancia, Íd., pág. 114.

Como parte de sus argumentos ante el Tribunal de Apelaciones, la peticionaria sostuvo que el foro primario incurrió en error al reconocerle legitimación activa a la recurrida para presentar la acción de desahucio sin la comparecencia ni autorización de los demás miembros de la sucesión relacionada con el inmueble, quienes, arguyó, eran partes indispensables. En segundo lugar, argumentó que se resolvió la demanda sin atender el planteamiento de la tácita reconducción. Asimismo, señaló que se dictó *Sentencia* sin celebrarse una vista en su fondo y con base en evidencia a la que no tuvo acceso, y que no fue estipulada, autenticada ni admitida conforme a las Reglas de Evidencia.[3] Por último, alegó que el foro primario también erró al no relevarla de la fianza en apelación.

Sin la comparecencia de la recurrida, el 21 de junio de 2024, el Tribunal de Apelaciones dictó una *Sentencia* mediante

---

[3]Sobre este señalamiento de error, la peticionaria enfatizó que, al momento de celebrarse la vista de desahucio el 30 de mayo de 2024, no tuvo acceso a los documentos adjuntos a la *Moción sometiendo testamento y certificación* presentada por la recurrida, ya que estos fueron clasificados como confidenciales en el expediente electrónico del Sistema Unificado de Manejo y Administración de Casos (SUMAC). Indicó que los recibió por correo electrónico una vez concluyó la vista. Por ello, argumentó que, si bien se celebró una vista en esa fecha, no se llevó a cabo una vista en su fondo en la que pudiera examinar la prueba adjunta a la moción, ni confrontar o contrainterrogar a la recurrida sobre los aludidos documentos, lo cual, según expresó, constituyó una violación a su debido proceso de ley. *Escrito de apelación*, Íd., págs. 20-23 y 36-37.

la cual desestimó el recurso por falta de jurisdicción.[4] Fundamentó su decisión en que el Tribunal de Primera Instancia no realizó una determinación previa de insolvencia, a pesar de que la peticionaria compareció representada por la OLC, entidad cuya creación fue propulsada por Servicios Legales de Puerto Rico, y el Proyecto DeCiudad, organización sin fines de lucro que trabaja conjuntamente en consorcio con la Clínica de Asistencia Legal de la Facultad de Derecho de la Universidad Interamericana de Puerto Rico. Así, al haberse impuesto una fianza apelativa de $800.00 y esta no haber sido consignada dentro del término jurisdiccional de cinco (5) días establecido en el Art. 631 del Código de Enjuiciamiento Civil, *infra*, concluyó que carecía de jurisdicción para considerar el recurso en sus méritos.

El 8 de julio de 2024, la señora Toledo Santana presentó una *Solicitud de reconsideración* ante el Tribunal de Apelaciones en la que argumentó que, conforme a jurisprudencia del Tribunal Supremo, del expediente se podía determinar su estado de insolvencia, por lo que debía ser eximida de la fianza en apelación. Por lo tanto, solicitó que se atendiera el recurso en sus méritos y se revocara la

---

[4] Adviértase que el foro intermedio prescindió de la comparecencia de la señora Reyes Santaella al amparo de la facultad que le confiere la Regla 7(B)(5) del Reglamento del Tribunal de Apelaciones, 4 LPRA, Ap. XXII-B, R. 7(B)(5). Véase, *Sentencia* del Tribunal de Apelaciones en el caso identificado con el alfanumérico KLAN202400566, pág. 5.

determinación del foro de primera instancia o, en su defecto, se convirtiera el caso en uno de procedimiento ordinario. Sin embargo, el 11 de julio de 2024[5], el foro apelativo intermedio declaró no ha lugar la solicitud de reconsideración.[6]

El 12 de agosto de 2024, la peticionaria compareció ante este Tribunal mediante una *Solicitud de certiorari*. Como único señalamiento de error, sostuvo que el Tribunal de Apelaciones erró al declararse sin jurisdicción para atender el recurso apelativo en sus méritos. Lo anterior, bajo el fundamento de que era necesaria la presentación de la fianza en apelación, a pesar de que del expediente surgía que la señora Toledo Santana es una persona indigente, cualificada y representada por la OLC y la Clínica de Asistencia Legal de la Universidad Interamericana de Puerto Rico. Por consiguiente, solicitó que se ordenara al Tribunal de Apelaciones resolver el caso en sus méritos, sin exigir el pago de la fianza como condición para asumir su jurisdicción.

Así las cosas, el 6 de diciembre de 2024, notificada el 9 de diciembre de 2024, emitimos una *Resolución* en la que expedimos el auto de certiorari solicitado.

---

[5] El 12 de julio de 2024 se notificó a las partes la *Resolución* que el Tribunal de Apelaciones emitió a esos efectos. Véase, Apéndice del recurso de certiorari de la peticionaria, pág. 139.

[6] En efecto, el panel compuesto por la jueza Ortiz Flores, el juez Rivera Torres, y el juez Campos Pérez declaró no ha lugar la solicitud de reconsideración. Ahora bien, la jueza Rivera Pérez hubiera reconsiderado. Íd.

El 26 de diciembre de 2024, la señora Reyes Santaella presentó ante este Foro un escrito titulado *Comparecencia especial de la demandante*.[7] En esencia, alegó que no cuenta con ingresos suficientes para cubrir los procedimientos post-sentencia y que la peticionaria ha ocupado su propiedad sin pagar renta desde julio de 2024. Manifestó que, según el Art. 629 del Código de Enjuiciamiento Civil, *infra*, la peticionaria disponía de un término jurisdiccional de cinco (5) días para presentar su apelación a partir de la *Sentencia* del Tribunal de Primera Instancia, emitida y notificada el 31 de mayo de 2024, por lo que debía hacerlo a más tardar el 5 de junio. No obstante, afirmó que la presentación se realizó el 7 de junio. Por ello, argumentó que el foro apelativo intermedio carecía de jurisdicción, incluso sin considerar la falta de consignación de la fianza. En vista de ello, solicitó que se declarara no ha lugar el recurso de *certiorari* y se ordenara la entrega de su inmueble.

Por su parte, el 10 de febrero de 2025, la señora Toledo Santana presentó el *Alegato de la parte peticionaria*. En este, reiteró los argumentos que expuso en su recurso de *certiorari*, así como en los escritos que presentó ante los foros inferiores.

Cabe mencionar que, el 13 de febrero de 2025, Servicios Legales de Puerto Rico, Inc. (SLPR) solicitó comparecer como

---

[7]Adviértase que la comparecencia en cuestión se presentó sin acompañar documentación alguna.

*amicus curiae*.[8] El 20 de febrero de 2025 declaramos ha lugar su petición.

Con el beneficio de la comparecencia de todas las partes, procedemos a resolver, no sin antes examinar el Derecho aplicable a la controversia.

## II.

## A.

El desahucio es el medio legal que tiene disponible la persona propietaria de un inmueble para recobrar judicialmente la posesión de su propiedad. *Adm. Vivienda Pública v. Vega Martínez*, 200 DPR 235, 240 (2018). Esta acción puede incoarse mediante un proceso ordinario o un proceso sumario. Íd.

En lo pertinente a la controversia que nos ocupa, el desahucio sumario es un procedimiento regulado por los Arts. 620-634 del Código de Enjuiciamiento Civil, 32 LPRA secs. 2821-2838. Esta normativa responde al interés del Estado en resolver de manera expedita la reclamación de la persona dueña de un inmueble cuyo derecho a poseer y disfrutar de su

---

[8]En su petición, informó que es una organización sin fines de lucro dedicada a la educación, el asesoramiento y la representación legal de personas de escasos recursos económicos ante agencias gubernamentales, tribunales, asuntos notariales y otros procesos legales. Señaló que una de sus prioridades es representar a personas demandadas en casos de desahucio en los que se han emitido sentencias sin la celebración de vistas, sin determinaciones de insolvencia y sin conceder la exención del pago de la fianza en apelación. En virtud de ello, solicitó autorización para comparecer como *amicus curiae* con el propósito de brindar una óptica que complemente los argumentos, datos e información que presenten las partes.

propiedad ha sido interrumpido. *ATPR v. SLG Vomar-Mathieu*, 196 DPR 5, 9 (2016); *Turabo Ltd. Partnership v. Velardo Ortiz*, 130 DPR 226, 234-235 (1992); *Mora Dev. Corp. v. Sandín*, 118 DPR 733, 749 (1987). Como resultado del procedimiento, puede ordenarse el lanzamiento o la expulsión de la persona arrendataria o precarista que detenta el inmueble sin pagar canon. *ATPR v. SLG Vomar-Mathieu*, supra, pág. 10.

En efecto, la acción de desahucio constituye "uno de los procedimientos más utilizados en nuestro país para reivindicar, mediante trámite y juicio sumario, la posesión y el disfrute de un inmueble". *Turabo Ltd. Partnership v. Velardo Ortiz*, supra.

**B.**

Las sentencias dictadas por el Tribunal de Primera Instancia en procedimientos de desahucio sumario son susceptibles de apelación. Art. 628 del Código de Enjuiciamiento Civil, 32 LPRA sec. 2830. En ese sentido, la parte que resulte adversamente afectada por una sentencia de desahucio sumario puede presentar un recurso de apelación en un término jurisdiccional de cinco (5) días, contados a partir de la fecha en que se archive en autos la notificación de la sentencia.[9] Art. 629 del Código de Enjuiciamiento Civil,

---

[9] La Asamblea Legislativa, mediante la Ley Núm. 86-2011, enmendó el Art. 629 del Código de Enjuiciamiento Civil, supra, y redujo el término para apelar una sentencia de desahucio sumario de treinta (30) días a cinco (5) días.

supra; *Adm. Vivienda Pública v. Vega Martínez*, supra, pág. 240.

Cabe señalar que, como norma general, las Reglas de Procedimiento Civil rigen en todo procedimiento de naturaleza civil que se lleve a cabo ante el Tribunal General de Justicia. Regla 1 de Procedimiento Civil de 2009, 32 LPRA Ap. V. Específicamente, la Regla 68.1 de Procedimiento Civil, supra, ilustra cómo se computan los términos establecidos por estas reglas, por orden del tribunal o por disposición de cualquier estatuto civil aplicable. En gran medida, el modo en que se computa un término depende de la cantidad de días que lo conforman.

En cuanto a los términos menores de siete (7) días, como ocurre en procedimientos de desahucios sumarios, estos comienzan a computarse a partir del día siguiente al acto o evento que los activó, excluyéndose del cómputo el día en que este evento o acto ocurrió. Regla 68.1 de Procedimiento Civil, supra. Sin embargo, y a diferencia de lo que ocurre al computar los términos que consisten en siete (7) días o más, en estos casos también se excluyen del cómputo los sábados, domingos y días de fiesta legal que ocurren entre medio. Íd. Ahora bien, si el último día del término es un sábado, domingo o día festivo legal, el término se extiende hasta el fin del próximo día laborable, como ocurre con los demás términos. Íd.

Además, este Tribunal ha expresado que el mecanismo provisto por la Regla 68.1 de Procedimiento Civil, supra, aplica al término jurisdiccional de cinco (5) días que el Art. 629 del Código de Enjuiciamiento Civil, supra, provee para apelar una sentencia de desahucio sumario. *Adm. Vivienda Pública v. Vega Martínez*, supra, págs. 243-245.

## C.

Por otro lado, en los casos de desahucio sumario, la parte demandada debe consignar una fianza como condición previa para presentar un recurso de apelación respecto a la sentencia que se dictó en su contra. Art. 630 del Código de Enjuiciamiento Civil, supra. Este requisito es de carácter jurisdiccional en todo pleito de desahucio, incluso cuando la reclamación no se fundamenta en la falta de pago. *Crespo Quiñones v. Santiago Velázquez*, 176 DPR 408, 413 (2009); *Blanes v. Valldejuli*, 73 DPR 2, 5 (1952). Lo anterior obedece a que la fianza no tiene como único fin garantizar los pagos adeudados, sino que también busca responder por los posibles daños que puedan surgir al restringir el uso libre de la propiedad mientras se dilucida el proceso apelativo. Art. 630 del Código de Enjuiciamiento Civil, supra.

En ese sentido, corresponde al Tribunal de Primera Instancia fijar la fianza, como paso previo y jurisdiccional a la presentación del recurso de apelación. *ATPR v. SLG Vomar-Mathieu*, supra, pág. 12; *Crespo Quiñones v. Santiago Velázquez*, supra, págs. 413-414 (citando la Exposición de

Motivos de la Ley Núm. 378-2000).[10] En consecuencia, hasta tanto el foro primario no fije en la sentencia el monto de la fianza, la sentencia carece de finalidad y, por ende, el término jurisdiccional de cinco (5) días para presentar la apelación no empieza a transcurrir. *ATPR v. SLG Vomar-Mathieu*, supra, pág. 15.

De otro lado, al tratarse de un requisito de naturaleza jurisdiccional, la falta de la consignación de la referida fianza impide que el Tribunal de Apelaciones adquiera jurisdicción para atender el recurso de apelación. No obstante, aquellos demandados o demandadas cuya insolvencia económica ha sido reconocida por el tribunal están exentos de cumplir con este requisito, pues su situación económica les imposibilita satisfacerlo. *ATPR v. SLG Vomar-Mathieu*, supra, pág. 12; *Bucaré Management v. Arriaga García*, 125 DPR 153, 158 (1990). Incluso, la Regla 69.6(d) de Procedimiento Civil, supra, dispone que, en los procedimientos de naturaleza civil, no se exigirá la prestación de una fianza cuando se trate de una parte litigante insolvente que esté expresamente exceptuada por ley para el pago de aranceles y derechos de presentación. Esta norma es cónsona con la política legislativa de garantizar el acceso a los tribunales

---

[10]La Ley Núm. 378-2000 enmendó el Art. 630 del Código de Enjuiciamiento Civil, supra, con el fin de establecer que el monto de la fianza en apelación en casos de desahucio será fijado por el Tribunal de Primera Instancia.

a las personas insolventes. *Bucaré Management v. Arriaga García*, supra, págs. 154 y 158.

En lo aquí material, y a modo analógico, es pertinente señalar que, en *Crespo Quiñones v. Santiago Velázquez*, supra, el Tribunal de Apelaciones desestimó el recurso por falta de jurisdicción, luego de que la parte demandada no consignara la fianza en apelación por su alegado estado de insolvencia. Ahora bien, una vez el recurso estuvo ante nuestra consideración, reconocimos que la condición de insolvencia de la allí demandada surgía del expediente del caso. Por tal razón, resolvimos que el foro apelativo intermedio debió haberla eximido del requisito de fianza y asumir jurisdicción para atender el recurso. En vista de ello, concluimos que dicho foro erró al desestimar la apelación.

**D.**

La Ley Núm. 81 de 26 de junio de 1964, conocida como la *Ley para eximir a las personas que sean atendidas por las clínicas de asistencia legal de las escuelas de derecho de Puerto Rico del pago de toda clase de derechos, aranceles, contribuciones o impuestos*, 4 LPRA sec. 303a *et seq.* (Ley Núm. 81-1964), fue promulgada con el propósito de facilitar el acceso a servicios legales gratuitos para personas de escasos recursos. Para ello, dispuso la exención del requisito de pago de sellos legales en los casos atendidos por estas clínicas con el fin de agilizar la labor del estudiantado practicante en las Escuelas de Derecho del país

y eliminar obstáculos económicos para la ciudadanía que requiera asistencia legal gratuita. Véase, Exposición de Motivos de la Ley Núm. 81-1964, supra.

Similarmente, la Ley Núm. 122 de junio de 1967, conocida como la *Ley para eximir de toda clase de aranceles a la Corporación de Servicios Legales de Puerto Rico y otras entidades análogas*, 32 LPRA sec. 1500 *et seq.* (Ley Núm. 122-1967), se creó ante la imperiosa necesidad de brindar a las personas indigentes toda la ayuda legal posible, de modo que puedan cobrar plena conciencia de sus derechos. Véase, Exposición de Motivos de la Ley Núm. 122-1967, supra.

Conforme a lo establecido en esta ley, tanto Servicios Legales de Puerto Rico, Inc., como las entidades análogas sin fines de lucro están exentas de cubrir cualquier cargo asociado

> **al trámite de los casos o asuntos en que estuvieren interviniendo a beneficio de las personas a quienes están prestando servicios legales gratuitos, del pago de toda clase de derechos, aranceles, contribuciones o impuestos de cualquier naturaleza dispuestos por las leyes vigentes para la tramitación de procedimientos judiciales** y la expedición de certificaciones en los centros del Gobierno Estatal, incluyéndose el sello forense y los impuestos notariales. (Negrillas suplidas). Art. 1, Ley Núm. 122-1967, supra.

Ahora bien, para que una persona pueda recibir servicios legales de forma gratuita, debe ser previamente cualificada por Servicios Legales de Puerto Rico, Inc., o por alguna entidad análoga. *Servicios Legales et al. v. Registradora*, 211 DPR 393, 409-410 (2023). La responsabilidad de evaluar

si una persona cumple con los requisitos para acceder a dicha asistencia recae exclusivamente en estas organizaciones sin fines de lucro. Íd. Nótese que la cualificación tiene como propósito asegurar que los servicios legales gratuitos se otorguen únicamente a personas indigentes. Íd.

Expuesto el Derecho pertinente, procedemos a discutir su aplicación a esta controversia.

**III.**

Según se adelantó, este Tribunal debe determinar si el Tribunal de Primera Instancia erró al imponer una fianza en apelación a una parte representada por entidades que proveen representación legal gratuita a personas de escasos recursos. En consecuencia, corresponde evaluar si el Tribunal de Apelaciones incurrió en error al desestimar el recurso apelativo por la falta de consignación de la fianza ante la alegación de insolvencia de la peticionaria.

A modo de repaso, la señora Reyes Santaella presentó una acción de desahucio en precario contra la señora Toledo Santana. Alegó que el contrato de arrendamiento por un (1) año que existía entre ambas venció y que, pese a ello, la peticionaria continuó ocupando su propiedad en contra de su voluntad expresa. En el proceso, la señora Toledo Santana compareció representada por la OLC y el Proyecto DeCiudad. Tras varias etapas procesales, el foro de primera instancia declaró con lugar la demanda e impuso una fianza en apelación de $800.00, la cual fue impugnada ante los foros inferiores.

Posteriormente, la peticionaria presentó un recurso de apelación ante el Tribunal de Apelaciones. Sin embargo, el foro intermedio se declaró sin jurisdicción debido a que no se consignó la fianza de $800.00. Ante tal determinación, la señora Toledo Santana recurrió ante este Tribunal.

Antes de abordar los méritos del reclamo relacionado con la fianza en apelación, es necesario atender el planteamiento de índole jurisdiccional que formuló la señora Reyes Santaella en su *Comparecencia especial de la demandante* ante este Tribunal. La recurrida señaló que, según el Art. 629 del Código de Enjuiciamiento Civil, supra, la peticionaria contaba con un término jurisdiccional de cinco (5) días, a saber, hasta el 5 de junio de 2024, para presentar su apelación a partir de la *Sentencia* del Tribunal de Primera Instancia, emitida y notificada el 31 de mayo de 2024. Afirmó que la apelación se presentó el 7 de junio, por lo que el foro apelativo intermedio carecía de jurisdicción, incluso sin considerar la falta de consignación de la fianza.

Este Tribunal ha sostenido previamente que el mecanismo dispuesto en la Regla 68.1 de Procedimiento Civil, supra, sobre el cómputo de términos, resulta aplicable al término jurisdiccional de cinco (5) días establecido en el Art. 629 del Código de Enjuiciamiento Civil, supra, para apelar una sentencia de desahucio sumario. *Adm. Vivienda Pública v. Vega Martínez*, supra, págs. 243-245. Tomando eso en cuenta, si bien es cierto que desde el 31 de mayo de 2024 —fecha en

que se emitió y notificó la sentencia impugnada— hasta el 5 de junio transcurrieron cinco (5) días calendarios, el 1 y 2 de junio correspondieron a sábado y domingo, respectivamente. Por tanto, estos días debían excluirse del cómputo conforme a la Regla 68.1. Esto implica que la peticionaria tenía hasta el 7 de junio de 2024 para acudir al Tribunal de Apelaciones, término que cumplió en este caso.

Atendido el asunto jurisdiccional, corresponde evaluar lo relacionado con la fianza. Este Tribunal también ha expresado que, para recibir servicios legales gratuitos, una persona debe ser previamente cualificada por Servicios Legales de Puerto Rico, Inc., o por alguna entidad similar. *Servicios Legales et al. v. Registradora*, supra, págs. 409-410.

Además, estas entidades sin fines de lucro están exentas de pagar cualquier cargo relacionado con los casos o asuntos en que intervienen a favor de las personas beneficiarias de estos servicios. Esta exención incluye todo tipo de derechos, aranceles, contribuciones o impuestos de cualquier naturaleza establecidos por las leyes vigentes para la tramitación de los procedimientos judiciales. Art. 1, Ley Núm. 122-1967, supra.

A la luz del expediente ante nuestra consideración, queda evidenciado que la señora Toledo Santana se encuentra en un estado de insolvencia que le imposibilita cumplir con el requisito de afianzamiento exigido para presentar un

recurso de apelación ante el Tribunal de Apelaciones. Tal condición económica fue reconocida por entidades que brindan servicios legales gratuitos a personas indigentes, específicamente la OLC y el Proyecto DeCiudad, las cuales prestan servicios sin fines de lucro en consorcio con la Facultad de Derecho de la Universidad Interamericana de Puerto Rico y análogas a Servicios Legales de Puerto Rico. Lo anterior, tras haber sido previamente cualificada para recibir la representación legal gratuita que estas entidades ofrecen.

Por otro lado, al final de todas las mociones de la peticionaria se consigna que estas se presentan libre de derechos, conforme a la Ley Núm. 81-1964, supra, al estar representada por la Clínica de Asistencia Legal de la Facultad de Derecho de la Universidad Interamericana de Puerto Rico.[11]

A su vez, el propio Tribunal de Primera Instancia, a petición de la representación legal de la señora Toledo Santana, la eximió del pago de los aranceles correspondientes a la solicitud de regrabación de la vista de desahucio —cuyo costo era de $12.00— por estar representada por entidades exentas de cubrir toda clase de cargos asociados a la

---

[11]Concretamente, al final de cada uno de los escritos presentados por la peticionaria se indica que este "[s]e presenta libre de derechos, 4 LPRA § 303a(2021), por las partes comparecientes ser representadas por la Oficina Legal de la Comunidad, Inc., y la Clínica de Asistencia Legal de la Facultad de Derecho de la Universidad Interamericana de Puerto Rico".

tramitación de casos judiciales cuando actúan en beneficio de personas indigentes, conforme a la Ley Núm. 122-1967, supra.[12] Por lo tanto, al haberla eximido del pago de la regrabación, procedía también reconocer la exención del pago de la fianza en apelación, mediante una determinación de indigencia.

Tal exención no solo es coherente con el marco legal vigente, sino que responde al propósito legislativo de garantizar el acceso a la justicia a las personas de escasos recursos. Así lo ha reiterado este Tribunal al sostener que cuando la insolvencia económica de una parte ha sido reconocida por el tribunal **o se desprende del expediente**, se justifica la exención del requisito de fianza. Véanse *Crespo Quiñones v. Santiago Velázquez*, supra; *Bucaré Management v. Arriaga García*, supra, pág. 158.

Resolver en sentido contrario atentaría contra el debido proceso de ley y la igual protección de las leyes de la peticionaria, en tanto tiene el efecto de privarla de su derecho a apelar la decisión del Tribunal de Primera

---

[12]Véase, Apéndice del alegato de la peticionaria, págs. 140-151. En concreto, el Tribunal de Primera Instancia dispuso en su *Resolución* del 9 de octubre de 2024 lo siguiente:

Ha lugar. Se ordena que se realice la regrabación de la vista celebrada el 30 de mayo de 2024, en un término de 10 días, **sin imponerle a la parte demandada el pago de los aranceles que se solicitan, por ésta estar representada por la Oficina Legal de la Comunidad de la Facultad de Derecho de la UIPR.** (Negrillas suplidas).

Instancia, por pertenecer a la clase insolvente. Además, implicaría imponerle a la OLC y al Proyecto DeCiudad la carga de asumir el pago de la fianza con el único fin de salvaguardar los derechos de su representada. No menos importante, ignoraríamos el mandato legislativo que les proveyó a estas entidades una amplia exención monetaria de cualquier naturaleza que impida el acceso a los tribunales de una persona representada en condición de insolvencia.

Recordemos que "los requisitos especiales del procedimiento sumario [requieren que se] protejan no solo el interés del dueño en recuperar rápidamamente la posesión del inmueble, sino también el derecho del demandado a tener un procedimiento justo conforme al debido proceso de ley".[13] *ATPR v. SLG Vomar-Figueroa*, supra, pág. 13 (citando a la Comisión de lo Jurídico Civil del Senado en su Informe Positivo sobre el Proyecto del Senado 1776 (eventual Ley Núm. 86-2011) el cual, con el propósito de agilizar el

_____

[13]Cabe destacar que, como parte de la protección del derecho de un demandado a un proceso de desahucio justo, es necesario aplicar, cuando corresponda, el *Protocolo para la atención, orientación y referido de personas sin hogar que se presentan en el Tribunal de Primera Instancia.* Este protocolo fue creado, entre otros fines, para atender asuntos de índole legal en los que se identifique la existencia de un caso o controversia que involucre a una persona sin hogar **o en riesgo de perder su hogar.**

De esta manera, conforme a este protocolo, en aquellos casos donde estén presentes menores de edad, el Tribunal de Primera Instancia deberá ordenar a la Secretaría del Tribunal notificar con copia de la sentencia a los Departamentos de la Familia y de la Vivienda, con el fin de que se le brinden a la familia afectada los servicios correspondientes.

procedimiento de desahucio, enmendó el Art. 629 del Código de Enjuiciamiento Civil, supra, y redujo el término para apelar la sentencia de treinta (30) días a cinco (5) días).

A mi juicio, y considerando las circunstancias económicas particulares de la señora Toledo Santana que surgen del expediente del caso, el Tribunal de Apelaciones debió reconocer su condición de insolvencia y asumir jurisdicción para atender el recurso. Al no hacerlo, dicho foro erró al desestimar la apelación.

### IV.

Por los fundamentos antes expresados, estoy conforme primordialmente con que se revoque la *Sentencia* emitida por el Tribunal de Apelaciones. En consecuencia, hubiese ordenado la devolución del caso ante el foro apelativo intermedio para que atendiera en los méritos el recurso presentado por la señora Toledo Santana. No obstante, en aras de colegiar, me subsumo en el criterio de que el Tribunal de Primera Instancia constate si las entidades que proveyeron representación legal a la peticionaria les cobija la legislación que provee la exención aquí reclamada.


Luis F. Estrella Martínez
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Dolores Reyes Santaella<br><br>Recurrida<br><br><br>v.<br><br><br>Omara Toledo Santana<br><br>Peticionaria | CC-2024-0490 | *Certiorari* |

Opinión de conformidad emitida por el Juez Asociado SEÑOR CANDELARIO LÓPEZ.

En San Juan, Puerto Rico, a 29 de julio de 2025.

Mediante el presente recurso, la parte demandada en un pleito de desahucio que compareció representada por dos organizaciones que operan en consorcio con la Clínica de Asistencia Legal de la Facultad de Derecho de Universidad Interamericana de Puerto Rico, nos solicitó que revocáramos la determinación del Tribunal de Primera Instancia de imponerle una fianza en apelación tras decretar el desahucio en precario. Al impugnar la imposición de la fianza y la subsiguiente desestimación de su recurso de apelación por falta de jurisdicción, nos invitó a resolver la siguiente controversia: ¿deben los tribunales eximir automáticamente del requisito de prestación de fianza en apelación en un caso de desahucio a un inquilino que comparece representado por una clínica de asistencia legal o una corporación análoga a la Corporación de Servicios Legales de Puerto Rico?

Examinada de manera aislada, parece inofensivo responder a esta pregunta en la afirmativa. Sin embargo, examinado detenidamente el expediente, la realidad es sustancialmente distinta a la que sugiere ese hecho aislado. Surge del mismo que la peticionaria admitió que cuenta con recursos suficientes para pagar la renta pactada. Ese fue precisamente su principal argumento para impugnar al desahucio. **Admite incluso que realiza pagos de renta mensuales de $800.00, cantidad <u>exactamente igual</u> a la que el Tribunal le impuso como fianza.**

Bajo este escenario, es complicado estar de acuerdo con la norma que propone que adoptemos. La controversia ante nuestra consideración es realmente la siguiente: ¿debemos eximir del requisito de fianza en apelación a un demandado cuya defensa contra el desahucio es precisamente su capacidad para pagar la renta? Con el mayor de los respetos, entiendo que no. Entiendo, además, que los tribunales no deben claudicar su deber de evaluar la condición económica de las partes y emitir las determinaciones de insolvencia que correspondan, caso a caso, basado en el derecho rogado por las partes, no de manera automática.

La Sentencia que hoy emitimos no atiende en los méritos esta controversia, en reconocimiento de que no estamos en posición de determinar si estas entidades deben ser tratadas como entidades análogas a la Corporación de Servicios Legales de Puerto Rico, o si pueden beneficiarse

de las exenciones que por disposición legal aplican a las clínicas de asistencia legal cuando representan clientes en probado estado de insolvencia. En su lugar, devuelve el caso al foro primario para que determine si, en efecto, aplican estas exenciones bajo las circunstancias de este caso.

Por las razones que expongo a continuación, hubiese confirmado la determinación tomada por el Tribunal de Apelaciones. Aun así, adelanto que, en ánimo de colegiar esta controversia, emito un voto de conformidad con la Sentencia emitida.

I.

El 19 de abril de 2024, la Sra. Reyes Santaella presentó una demanda de desahucio en precario contra la Sra. Toledo Santana, por esta última continuar en posesión del inmueble arrendado habiendo ya vencido el contrato de arrendamiento otorgado por las partes. En virtud de este contrato, las partes pactaron el arrendamiento por un año, comenzando el 15 de abril de 2023, a cambio de un canon mensual de $800.00. No surge del contrato que la obligación de pago de la demandada hubiese sido subsidiada en todo o en parte bajo algún programa de asistencia económica del Departamento de la Vivienda, del Departamento de la Familia o por alguna otra entidad gubernamental estatal o federal.

Según la Sra. Reyes Santaella, desde la fecha de vencimiento del contrato, el 1 de abril de 2024, hasta el presente, la Sra. Toledo Santana continúa en posesión del

inmueble en precario y "en contra de la voluntad expresa de la parte demandante", a pesar de haberle requerido que desalojara la propiedad. Por tal tazón, solicitó al Tribunal de Primera Instancia que decretara el desahucio y que ordenara el pago de $1,500 en honorarios de abogado.

En esa misma fecha, la Sra. Reyes Santaella presentó un formulario de emplazamiento a ser expedido por el Tribunal, y copia del contrato de arrendamiento vencido. Del contrato efectivamente surge que la arrendataria se obligó al pago de $800.00 mensuales a partir del 15 de abril de 2023. Las partes hicieron constar que la arrendataria no recibía el inmueble en condiciones de mudarse inmediatamente, sino con visible desgaste y falta de mantenimiento, condiciones que también fueron descritas en el contrato. **La arrendataria se obligó a contratar los servicios de un contratista para retirar, demoler y reemplazar el gabinete de la cocina, y a comprar pintura para la pared y las rejas para pintar el inmueble.** Para ello, la arrendadora aceptó cotizaciones por la cantidad de **$1,500.00 para el gabinete y $330.98 por la pintura**, las cuales pagaría utilizando el dinero destinado a la fianza, así como la renta de los meses de abril y mayo de 2023. La arrendadora también autorizó a la arrendataria a realizar mejoras adicionales, **incluyendo la construcción de una jardinera en concreto y bloques, al costo de la arrendataria.**

Examinada la demanda presentada, el TPI pautó una vista de desahucio para el 30 de mayo de 2024, y ordenó que la Sra. Reyes Santaella diligenciara y notificara a la Sra. Toledo Santana una copia de la citación y de la demanda diez (10) días antes del señalamiento.

El 30 de mayo de 2024, la Sra. Toledo Santana presentó una *Moción asumiendo representación legal y solicitud de desestimación*. En primer término, informó que "solicitó y cualificó" para recibir los servicios de la Oficina Legal de la Comunidad Inc. ("OLC" o "la corporación") y del Proyecto de Desarrollo Económico y Comunitario y Derecho a la Ciudad de la Facultad de Derecho de la Universidad Interamericana de Puerto Rico ("Proyecto De Ciudad"), por lo cual ambas entidades asumían su representación legal. Además, solicitó la desestimación de la demanda bajo el fundamento de que la Sra. Reyes Santaella no cuenta con legitimación activa para instarla por no ser titular del inmueble ni contar con un poder que la faculte a hacerlo.

**En la alternativa, planteó que el contrato de arrendamiento sigue vigente, pues no ha dejado de pagar la renta pactada de $800.00 mensuales y la Sra. Reyes Santaella continuaba recibiendo sus pagos a esa fecha.** En consecuencia, reclama que el contrato se ha renovado mes a mes bajo la doctrina de tácita reconducción. **A estos efectos, anejó a su moción evidencia de pagos remitidos a la Sra. Reyes Santaella el 3 de febrero, 3 de marzo, 4 de**

**abril y 5 de mayo de 2024, identificados como pagos de renta, todos por la cantidad de $800.00.**

En esta primera comparecencia, la Sra. Toledo Santana informó lo siguiente:

> *Se presenta libre de derechos, 4 LPRA § 303a (2021), por las partes comparecientes ser representadas por la Oficina Legal de la Comunidad, Inc., y la Clínica de Asistencia Legal de la Facultad de Derecho de la Universidad Interamericana de Puerto Rico.*

Sin embargo, no acreditó la naturaleza de esta corporación, cómo ni para qué cualificó a la Sra. Toledo Santana, si le brindaba sus servicios gratuitamente, ni las circunstancias que la harían merecedora de estos servicios. Tampoco solicitó que se le eximiera del pago de cualesquiera aranceles o fianzas aplicables en la eventualidad de obtener un resultado adverso en el proceso de desahucio instado en su contra. Finalmente, no apercibió al TPI sobre la necesidad de notificar la demanda al Departamento de la Familia y al Departamento de la Vivienda.

El 30 de mayo de 2024, la Sra. Reyes Santaella presentó una *Moción sometiendo testamento y certificación* acreditando que el titular del inmueble en cuestión, don Felipe Castillo Lamboy, otorgó testamento abierto en el cual le adjudicó el tercio de libre disposición sobre la propiedad, nombrándola además albacea y administradora de sus bienes. Alegó haber creado con el Sr. Castillo Lamboy una comunidad de bienes y poseer este inmueble en calidad de dueña desde su fallecimiento, por lo que cuenta con

legitimación para instar esta acción. Acompañó su moción con copia del testamento otorgado por el Sr. Castillo Lamboy, la cual cargó de manera confidencial al Sistema Unificado de Manejo y Administración de Casos del Poder Judicial ("SUMAC").

El 30 de mayo de 2024, se celebró la vista de desahucio mediante videoconferencia, a la cual asistieron ambas partes acompañadas por sus respectivos representantes legales. Luego de que el foro de instancia hiciera constar la presentación de la moción dispositiva por la Sra. Toledo Santana y el escrito presentado por la Sra. Reyes Santaella, las partes argumentaron sus respectivas posiciones en cuanto a la legitimación activa de esta última para instar esta acción. La Sra. Toledo Santana informó al Tribunal que un pleito paralelo instado por la demandante bajo el número CA2023CV02105, solicitando la recisión del contrato y el desalojo de la propiedad, fue declarado no ha lugar por una sala hermana.[1] Por su parte, la Sra. Reyes Santaella solicitó que se admitiera en evidencia el contrato de arrendamiento, y que se determinara que el mismo está vencido, que está legitimada para instar esta acción, y que se decrete el desahucio con la imposición de honorarios de abogado.

---

[1] En el caso Civil Núm. CA2023CV02105, la recurrida instó demanda a pocos meses de haber firmado el contrato de arrendamiento con la peticionaria, impugnando su validez por mediar vicio en su consentimiento. En lo pertinente, surge del expediente que la demandada contrató una corredora de bienes raíces, que realizó las mejoras pactadas, y que contrató los servicios de un electricista, un plomero y un albañil, y además compró cemento, los cuales el tribunal concluyó que sufragó con fondos propios.

Atendidos estos asuntos, el Tribunal de Primera Instancia informó que atendería las mociones presentadas y emitiría la correspondiente resolución o sentencia de conformidad.

**Durante esta vista, la Sra. Toledo Santana no informó al foro de instancia sobre su condición económica. Tampoco solicitó que se emitiera una determinación en cuanto a su estado de indigencia o insolvencia, ni reclamó la presencia del Departamento de la Vivienda y de la Familia para que le brindaran servicios.**

El 31 de mayo de 2024, el Tribunal de Primera Instancia emitió una *Resolución* declarando No Ha Lugar la moción dispositiva presentada por la Sra. Toledo Santana. Razonó que la Sra. Reyes Santaella estaba facultada para instar esta acción como miembro de la sucesión del dueño del inmueble, y además por tratarse de un acto de administración en el cual no tenían que concurrir todos los miembros de la sucesión. Así las cosas, decretó que, ante un reclamo válido del titular del inmueble, la Sra. Toledo Santana tenía que abandonar el apartamento.

En esa misma fecha, el Tribunal de Primera Instancia emitió una *Sentencia* de desahucio por estar vencido el contrato de arrendamiento otorgado. En consecuencia, ordenó el desalojo de la propiedad en un término de treinta (30) días, e impuso una fianza en apelación ascendente a $800.00.

El 31 de mayo de 2024, la Sra. Toledo Santana presentó una *Moción de reconsideración a fijación de fianza*. Señaló que el Tribunal de Primera Instancia dictó su sentencia sin celebrar vista en su fondo, sin darle acceso a la prueba de la demandante y sin haberse admitido prueba conforme a las Reglas de Evidencia, "en craso menosprecio del debido proceso de ley". Reclamó **por primera vez en estos procedimientos** que no se notificó al Departamento de la Vivienda ni al Departamento de la Familia y, además, que "se le impuso una fianza en apelación de $800 a pesar de la parte demandada ser insolvente y estar exenta del pago de la misma por estar siendo representada por la Oficina Legal de la Comunidad de la Facultad de Derecho de la Universidad Interamericana de Puerto Rico". En apoyo a su posición, aduce que, en *Crespo Quiñones v. Santiago Velázquez*, 176 DPR 408 (2009), esta curia reconoció que la condición de insolvencia económica de una parte puede surgir del récord del caso.

De igual modo, señaló que, en *Servicios Legales et al. v. López Ortiz*, 211 DPR 393 (2023), este Tribunal determinó que "[n]o corresponde a los tribunales intervenir con las determinaciones de elegibilidad realizadas por las entidades que proveen representación legal gratuita a personas de escasos recursos económicos". A tenor de estas determinaciones, sostiene que debemos interpretar "que la clientela de dichas entidades está exenta del requisito de

prestación de fianza dispuestas en el Código de Enjuiciamiento Civil".

El 3 de junio de 2024, el Tribunal de Primera Instancia ordenó que la Sra. Reyes Santaella presentara su posición dentro de un término de cinco (5) días.

No obstante, el 7 de junio de 2024, la Sra. Toledo Santana presentó ante el Tribunal de Apelaciones un recurso de apelación de la sentencia de desahucio emitida. En atención a lo que catalogó como el "propósito perverso" del Tribunal de Primera Instancia, señaló la comisión de los siguientes errores:

> 1. Erró el Tribunal de Primera Instancia al reconocerle legitimación activa a la demandante-apelada para presentar la acción de desahucio sin la comparecencia y sin que constara autorización de los demás miembros de la sucesión de Felipe Castillo Lamboy, quienes son partes indispensables, razón por la cual su dictamen es nulo.
>
> 2. Erró el Tribunal de Primera Instancia al declarar No Ha Lugar la moción de desestimación de la parte demanda sin atender el planteamiento de tácita reconducción hecho por la parte demandada apelante.
>
> 3. Erró el Tribunal de Primera Instancia al dictar sentencia sin celebrar vista en su fondo y ordenando el desahucio de la demandada apelante, fundamentando su decisión en prueba a la que no tuvo acceso la parte demandada apelante y que tampoco fue estipulada, autenticada ni admitida como requieren las reglas de evidencia.
>
> 4. Erró el Tribunal de Primera Instancia al no relevar de imposición de fianza en apelación a la parte demandada apelante, a pesar de esta estar representada por la Oficina Legal de la Comunidad de la Facultad de Derecho de la Universidad Interamericana de Puerto Rico.

En lo pertinente al requisito de fianza en apelación, la demandada reclamó estar exenta del pago impuesto por el tribunal en ese concepto, pues es representada por la Clínica de Asistencia Legal de la Universidad Interamericana de Puerto Rico y la Oficina Legal de la Comunidad, Inc., a pesar de que quien compareció como su representante legal junto con esta última fue el Proyecto De Ciudad, y de no comparecer ningún estudiante de la clínica de asistencia legal. Reiteró que, en *Crespo Quiñones v. Santiago Vázquez*, *supra*, reconocimos que la insolvencia económica de una parte puede surgir del récord, por lo que procedía que el TPI la eximiera expresamente de este requisito. A esto añadió que la evaluación de las cualificaciones de un cliente para recibir sus servicios corresponde a la corporación, por lo cual su clientela está exenta del requisito de fianza en apelación en casos de desahucio.

Luego de algunos trámites procesales que no es necesario pormenorizar, el 21 de junio de 2024, el Tribunal de Apelaciones prescindió de la comparecencia de la parte apelada y emitió la sentencia recurrida, desestimando el recurso por falta de jurisdicción. Según el tribunal, no surge del expediente del caso que el Tribunal de Primera Instancia hubiese realizado una determinación de insolvencia en favor de la demandada, sino que le impuso una fianza en apelación de $800.00. En virtud de lo anterior, concluyó que esta tenía cinco (5) días

jurisdiccionales para presentar el recurso de apelación y prestar la fianza, y que su incumplimiento con este requisito le privó de jurisdicción para atender el recurso.

Rechazada una solicitud de reconsideración por el foro revisor, acude la Sra. Toledo Santana ante este Tribunal para que revoquemos la sentencia emitida por el foro intermedio y decretemos que tenía jurisdicción para atender su recurso. Plantea su petición de la siguiente forma:

> Erró el Tribunal de Apelaciones al declararse sin jurisdicción para atender en sus méritos la apelación presentada bajo el fundamento de que era necesaria la prestación de la fianza en apelación, a pesar de que del récord del caso surge que la peticionaria es una persona indigente, cualificada y representada por la Oficina Legal de la Comunidad, Inc. y la Clínica de Asistencia Legal de la Facultad de Derecho de la Universidad Interamericana de Puerto Rico.

Aduce la peticionaria que su propósito es cuestionar la validez de "una práctica de reciente tendencia en las salas del TPI donde se ventilan casos de desahucio, que consiste en imponerle fianzas en apelación a partes demandadas representadas por organizaciones como la OLC y la [Clínica de Asistencia Legal]". Esta práctica —según ella— consiste en imponer fianzas "que dificultan o impiden que las personas pobres de nuestro país puedan cuestionar sus determinaciones" y colocan barreras "exclusivas para las personas que se encuentran en desventaja económica [...], pues quien sí tiene dinero, no tiene impedimento para apelar".

Según la peticionaria, esta llamada práctica "atenta contra la garantía constitucional del debido proceso [de]

ley y la igual protección de las leyes, en tanto les impone una carga onerosa (incluso imposible de cumplir por su situación económica) como condición para poder ejercer el derecho a apelar". Además, "promueve peligrosamente" que utilice su facultad de imponer fianzas para impedir que sus sentencias sean cuestionadas.

En los méritos, la peticionaria reitera que el foro de instancia o el apelativo debieron eximirla del requisito de prestar fianza en apelación porque su situación de insolvencia surge del expediente del caso, refiriéndose una vez más a que es representada por la clínica de asistencia legal de la Universidad Interamericana. Por tal razón, nos solicita que devolvamos el caso al Tribunal de Apelaciones para que lo atienda en los méritos.

El 6 de diciembre de 2024, este Tribunal emitió Resolución expidiendo el auto solicitado. Así las cosas, el 26 de diciembre de 2024, la parte recurrida presentó *Comparecencia especial de la demandante.* Indica que no cuenta con suficientes ingresos para costear los procedimientos postsentencia, y **sostiene que la peticionaria continúa utilizando la propiedad sin pagar canon de arrendamiento desde julio de 2024.** Señala a su vez que la peticionaria presentó su recurso fuera del término de cinco (5) días que dispone el Artículo 629 del Código de Enjuiciamiento Civil, pues notificada la sentencia del Tribunal de Primera Instancia el 31 de mayo de 2024, tenía hasta el 5 de junio para presentarlo. Al presentarlo el 7

de junio, el foro intermedio carecía de jurisdicción para atenderlo por tratarse de un término jurisdiccional.

El 10 de febrero de 2025, la peticionaria presentó *Alegato de la parte peticionaria*, en el cual esencialmente reiteró los planteamientos vertidos en su recurso de *certiorari*.

El 13 de febrero de 2024, la Corporación de Servicios Legales de Puerto Rico, Inc. ("S.L.P.R.") presentó *Moción solicitando autorización para que Servicios Legales de Puerto Rico comparezca como amicus curiae*, acompañada de un *Alegato como Amicus Curiae de Servicios Legales de Puerto Rico, Inc.* El 20 de febrero de 2025, emitimos Resolución autorizando la participación de S.L.P.R. como *amicus curiae*.

Con este trasfondo en mente, exponemos a continuación los fundamentos en que basamos nuestra opinión de conformidad.

II.

A.

El desahucio es un procedimiento especial de naturaleza sumaria cuya finalidad es recuperar la posesión de una propiedad inmueble mediante el lanzamiento o expulsión del arrendatario o precarista que la detente. *Acosta et al. v. S.L.G. Ghigliotti*, 186 PR 984, 989 (2012); *Mora Dev. Corp. v. Sandín*, 118 DPR 733 (1987). Se trata del medio que tiene el dueño de un inmueble arrendado para recobrar judicialmente su posesión cuando el arrendamiento

se acaba debido a la concurrencia de alguna de sus causas de extinción. *Adm. Vivienda Pública v. Vega Martínez*, 200 DPR 235, 240 (2018). El único pronunciamiento que emitir en una sentencia de desahucio es si procede ordenar el desalojo o no. *Fernández & Hno. v. Pérez*, 79 DPR 244, 248 (1956).

Como se sabe, el Código de Enjuiciamiento Civil es el cuerpo legal a seguir para instar una acción de desahucio sumario. 32 LPRA sec. 2821 *et seq.* De acuerdo con el Artículo 620 del Código, 32 LPRA sec. 2821, "[t]ienen acción para promover el juicio de desahucio los dueños de la finca, los usufructuarios y cualquiera otro que tenga derecho a disfrutarla, y sus causahabientes". Instada la acción, "procederá el desahucio contra los inquilinos, colonos y demás arrendatarios, los administradores, encargados, porteros o guardas puestos por el propietario en sus fincas, y cualquier otra persona que detente la posesión material o disfrute precariamente, sin pagar canon o merced alguna". Art. 621 del Código de Enjuiciamiento Civil, 32 LPRA sec. 2822.

Para ser eficaz, el desahucio en precario debe apoyarse en dos fundamentos: la posesión real del demandante a título de dueño de la finca, de usufructuario o cualquier otro que le dé derecho a disfrutarla; y la condición de precarista del demandado, es decir, su ocupación del inmueble sin otro título que la mera tolerancia del dueño o poseedor, bien porque nunca ha

tenido título que justifique el goce o porque teniendo en tiempo virtualidad, lo haya perdido. *C.R.U.V. v. Román*, 100 DPR 318, 326 (1971). El desahucio en precario procede entonces cuando el demandante presenta acción contra una persona que no ostenta título o derecho alguno sobre el bien.

Sin embargo, si este presenta prueba que demuestre que tiene derecho a ocupar el inmueble y que posee sobre este algún título igual o mejor que el del demandante, surge un conflicto de título que hace improcedente la acción de desahucio. Íd.; *Escudero v. Mulero*, 63 DPR 574 (1944).

B.

La característica medular de un procedimiento civil sumario es lograr, lo más rápido y económicamente posible, la reivindicación de determinados derechos, reduciendo al mínimo constitucionalmente permisible el elenco de garantías procesales. *Turabo Ltd. Partnership v. Velardo Ortiz*, 130 DPR 226, 234 (1992). Este ejercicio conlleva acortar términos y prescindir de ciertos trámites comunes al proceso ordinario, sin negar al demandado oportunidad real de presentar sus defensas. Íd. Este carácter sumario responde al interés del Estado de atender con agilidad el reclamo de una persona que es dueña de un inmueble que ha sido impedida de ejercer su derecho a poseer y disfrutarlo. *Cooperativa v. Colón Lebrón*, 203 DPR 812, 820 (2020); *ATPR v. SLG Volmar-Mathieu*, 196 DPR 5, 9 (2016).

De conformidad con el Artículo 623 del Código de Enjuiciamiento Civil, 32 LPRA sec. 2824, un pleito de desahucio se promueve por medio de una demanda redactada conforme a lo prescrito para un pleito ordinario bajo las Reglas de Procedimiento Civil. Sin embargo, el término dentro del cual las partes deben comparecer es uno abreviado: se deberá celebrar el juicio dentro de los 10 días siguientes a la fecha en que se presentó la reclamación. Íd. Desfilada la prueba, el tribunal debe dictar sentencia declarando si procede o no el desahucio dentro de un término mandatorio no mayor de 10 días. Artículo 625 del Código de Enjuiciamiento Civil, 32 LPRA sec. 2826.

Dictada la sentencia de desahucio, el Código de Enjuiciamiento Civil dispone además un procedimiento de apelación marcadamente distinto al de un pleito ordinario. Primero, las apelaciones deben interponerse dentro de un término de cinco (5) días laborables, contados a partir de la fecha de archivo en autos de copia de la notificación de la sentencia. Art. 629 del Código de Enjuiciamiento Civil, 32 LPRA sec. 2831; Regla 68.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 6.1. Además, como parte de su sentencia el tribunal debe fijar una fianza en apelación, "para responder de los daños y perjuicios que pueda ocasionar al demandante y de las costas de apelación". Artículo 630 del Código de Enjuiciamiento Civil, 32 LPRA sec. 2832.

Como hemos expuesto en el pasado, la razón de ser del requisito de fianza en apelación es obvia: **la fianza no existe solo para garantizar los pagos adeudados, sino también los daños resultantes de mantener congelado el libre uso de la propiedad afectada mientras se dilucida la apelación**. *Crespo Quiñones v. Santiago Vázquez*, *supra*, pág. 414.

El requisito de fianza en apelación es de naturaleza jurisdiccional. *Acosta v. S.L.G. Ghigliotti*, *supra*; *Blanes v. Valldejuli*, 73 DPR 2, 5 (1952). Por lo tanto, si el demandado no presta la fianza, el Tribunal de Apelaciones no tendrá jurisdicción para atender su recurso de apelación.

No obstante, en aquellos casos en que un demandado **cuya probada insolvencia económica ha sido reconocida por el Tribunal** conforme con la Ley Núm. 6 de 26 de junio de 1980, este queda exonerado de otorgar fianza o consignar el importe adeudado a la fecha de la sentencia como condición para instar apelación de una acción de desahucio. *Bucaré Management v. Arriaga García*, 125 DPR 153 (1990). Como hemos explicado antes, esta excepción obedece a que requerir una fianza a un demandado insolvente le impondría una condición imposible de cumplir. Íd. Esta es la única excepción del requisito de prestación de fianza en apelación en casos de desahucio que hemos reconocido hasta ahora.

C.

La Ley Núm. 6 del 26 de junio de 1980 fue aprobada por la Asamblea Legislativa para enmendar los artículos 623 y 635 del Código de Enjuiciamiento Civil, con el propósito de requerir que toda acción y sentencia de desahucio contra una familia de insolvencia económica sea notificada a los Secretarios de los Departamentos de la Familia y de la Vivienda.

Según enmendado, el Artículo 623 del Código requiere, una vez se convoque al actor y al demandado para comparecencia, "si en dicha vista **quedare demostrado** que el mandamiento es contra una familia de **probada** insolvencia económica, el tribunal ordenará que se notifique a los Secretarios de los Departamentos de Servicios Sociales y de la Vivienda, con copia de la demanda de desahucio promovida". 32 LPRA sec. 2824. Estas agencias deben evaluar la condición socioeconómica de la familia y brindarán la ayuda social que esté justificada; además, deben rendir un informe al tribunal sobre las ayudas a las que la familia tenga derecho.

De igual modo, la enmienda al Artículo 635 dispone que cuando se haya determinado la insolvencia económica de la familia contra la cual procede el desahucio, la sentencia se notificará a los Secretarios de los Departamentos de la Familia y de la Vivienda para que continúen brindando sus servicios. Además, prescribe un término de 40 días para el lanzamiento, durante el cual deberán estar presentes funcionarios de ambos departamentos.

D.

La Ley Núm. 81 de 26 de junio de 1964, conocida como la *Ley para eximir a las personas que sean atendidas por las clínicas de asistencia legal de las escuelas de derecho de Puerto Rico del pago de toda clase de derechos, aranceles, contribuciones o impuestos*, 4 LPRA sec. 303a *et seq.* ("Ley 81-1964") fue promulgada con el objetivo de que las personas que reciben servicios de las clínicas de asistencia legal de las facultades de Derecho en Puerto Rico tramiten sus casos sin necesidad de cancelar sellos o pagar cualquier clase de derechos, aranceles o impuestos de cualquier naturaleza para tramitar procedimientos judiciales.

Esta ley se aprobó en atención al fin "eminentemente pedagógico" de las clínicas de asistencia legal. Según su Exposición de Motivos, estas clínicas funcionan como parte del *curriculum* de las facultades de Derecho para "ofrecer a los estudiantes de Derecho en su último año, algunas experiencias prácticas de sus conocimientos legales y a la vez, desarrollar en los estudiantes conciencia de los deberes sociales que como profesionales habrán de tener en la práctica de la profesión". Por tal razón, el legislador entendió deseable conceder a quienes reciben estos servicios la oportunidad de que se tramiten sus casos sin el requisito de cancelar sellos, y así "expeditar en parte la labor de las clínicas".

Asimismo, la Ley Núm. 122 de 9 de junio de 1967, según enmendada, conocida como la *Ley para eximir de toda clase de aranceles a la Corporación de Servicios Legales de Puerto Rico y otras Entidades Análogas*, 32 LPRA sec. 1500 ("Ley 122-1967"), se aprobó con el objetivo de eximir a la Corporación de Servicios Legales de Puerto Rico, el Centro Legal de Ayuda a Menores del Distrito de Mayagüez, Inc., la Corporación de Servicios Legales de San Juan "y toda aquella otra entidad u organización municipal sin fines de lucro cuyas funciones y propósitos sean similares a los de dichas corporaciones", del pago de derechos dispuestos por las leyes vigentes para la tramitación de procedimientos judiciales.

De acuerdo con el texto de esta ley, dichas corporaciones estarán exentas "en todo lo que fuere pertinente al desempeño de sus funciones y logros de sus objetivos o cuando sea necesario para el trámite de los casos o asuntos en que estuvieran interviniendo a beneficio de las personas a quienes están prestando servicios legales gratuitos, del pago de toda clase de derechos, aranceles, contribuciones o impuestos de cualquier naturaleza dispuestos por las leyes vigentes para la tramitación de procedimientos judiciales y la expedición de certificaciones en los centros del Gobierno Estatal, incluyéndose el sello forense y los impuestos notariales".

La Ley dispone que el Secretario de Justicia lleve constancia de todas las organizaciones o entidades que se

acojan al beneficio de esta sección y, a tales efectos, deberá autorizar y certificar previamente a éstas. Íd.

III.

Según adelantado, la peticionaria expone que fue un error tanto del Tribunal de Primera Instancia como del Tribunal de Apelaciones no reconocer la condición de insolvencia de la peticionaria. Su principal --y como veremos, único-- fundamento en apoyo a esta conclusión es que compareció representada por la OLC y por el Proyecto De Ciudad, ambas entidades sin fines de lucro adscritas a la Facultad de Derecho de la Universidad Interamericana, que prestan de ordinario servicios a personas de escasos recursos. **El recurso no identifica circunstancia personal alguna de la peticionaria que se hubiese considerado, ya sea falta de ingresos, condiciones médicas o físicas, o cualquier otra situación que le imposibilitara pagar la fianza impuesta. De esta forma, reclama que demos entera fe al criterio no anunciado de estas entidades al cualificar a sus clientes, y nos requiere dar por bueno que solo porque asumieron su representación, en efecto es incapaz de pagar una fianza en apelación.**

Como vemos, la peticionaria resalta la absoluta independencia de criterio que entiende debemos conceder a ambas entidades al cualificar a sus clientes. Como consecuencia inescapable, los tribunales no tendrían discreción alguna para verificar si una parte demandada es

insolvente, pues tal determinación "corresponde exclusivamente a la entidad".

Examinados detenidamente los hechos del presente caso, salta inmediatamente a la vista que, a diferencia de casos más típicos de desahucio en precario, la peticionaria no impugna la acción por poseer un mejor título sobre el inmueble. **La impugna porque aduce, y lo evidencia, que tiene capacidad para pagar la renta pactada.** Surge claramente del expediente que, al solicitar la desestimación de la acción ante el foro de instancia, su teoría fue que continuó pagando los cánones pactados de $800.00 mensuales, por lo que se configuró la tácita reconducción y se mantuvo vivo el arrendamiento. **Es de notar que la cantidad que continuó pagando mensualmente, $800.00, es exactamente igual a la que le impuso el Tribunal de Primera Instancia como fianza en apelación.** De su faz, la admitida capacidad de la peticionaria para continuar pagando renta luce radicalmente incompatible con la determinación automática de insolvencia que propone que adoptemos.

Es igualmente notable que como parte del contrato de arrendamiento la peticionaria se obligó a realizar reparaciones al inmueble cuyo costo, aunque reembolsable, le tocó sufragar con dinero propio. Asumió además, **a su costo**, la reparación de las puertas de los baños, la verja de seguridad del patio, tapas de inodoros, tomacorrientes

y puertas corredizas de cristal, así como pintar los marcos de las puertas de los cuartos y baños.

Como ocurre con su capacidad para pagar renta, contar con medios suficientes para sufragar mejoras y reparaciones en la residencia es incompatible con una determinación de insolvencia. Al final, la ironía de no poder pagar como fianza lo que puede pagar en renta es demasiado conspicua como para dejarla de lado. Ante este escenario, no puedo avalar la determinación automática de insolvencia que se nos propone adoptar como norma: lejos de demostrar que el criterio de estas entidades merece deferencia, los hechos de este caso demuestran la necesidad de intervención judicial para determinar la insolvencia de una parte.

Abona a nuestro escepticismo la forma errática en que ambas entidades reclaman estar exentas por disposición legal del pago de aranceles y derechos aplicables a los casos en que participan. Por un lado, Proyecto De Ciudad reclama beneficios para sus clientes bajo la Ley Núm. 81-1964, **pero no comparece en ninguna etapa algún estudiante-abogado que nos lleve a concluir que la entidad se comporta como una clínica de asistencia legal y no como un bufete privado**. En el caso de OLC, esta aduce ser una "entidad análoga" a la Corporación de Servicios Legales de Puerto Rico para propósitos de la Ley Núm. 122-1967, **pero en al menos uno de los casos que cita en su escrito, tanto ella**

como el Proyecto De Ciudad comparecieron en representación de una corporación, no de una persona natural.[2]

Aunque la Ley Núm. 122-1967 no define el término, entendemos que una "entidad análoga" a la Corporación de Servicios Legales de Puerto Rico solo puede representar personas naturales insolventes, no compañías. Además, nos parece obvio que las disposiciones sobre insolvencia contenidas en el Código de Enjuiciamiento Civil solo aplican a personas naturales. La conclusión puede ser solo una: **las cualificaciones sobre insolvencia que hacen la OLC y el Proyecto De Ciudad no son compatibles con las que hacen a diario los tribunales en los casos de desahucio ante su consideración.**

Por tal razón, estoy en abierto desacuerdo con la norma propuesta por la peticionaria. Aun reconociendo las disposiciones legales que eximirían tanto a las clínicas de asistencia legal como las compañías análogas, **la exoneración del pago de una fianza en apelación no puede darse de forma automática, pues se trata de un pago de naturaleza distinta al de los aranceles y derechos de litigio.** Adoptar esta norma impediría que los tribunales puedan cerciorarse de que las partes sean verdaderamente acreedoras de este beneficio. En mi opinión, este caso es ejemplo perfecto de ello.

---

[2] Véase, Civil Núm. SJ2024CV02740, *Mango Tree Properties, LLC v. Yamil Colón Nuñez, Pablo Varona Borges, Paseo 13, Inc. y otros*. La OLC y el Proyecto De Ciudad representaron al Sr. Pablo Varona Borges **y la corporación Paseo 13.**

Nótese que la postura que asumo no contradice de forma alguna lo resuelto en *Servicios Legales de Puerto Rico v. Registradora*, *supra*. La evaluación de las cualificaciones de un cliente para recibir asistencia legal gratuita de la Corporación de Servicios Legales o de entidades análogas, en efecto, compete exclusivamente a estas. Si su evaluación contraviniese los términos bajo los que reciben asistencia económica gubernamental, de ello responderían en otro foro. En lo aquí pertinente, sin embargo, esa facultad exclusiva de decidir a quién representan no puede ser equivalente automáticamente a una determinación de insolvencia que por ley corresponde hacer a los tribunales.

Tampoco pretendo que se dejen sin efecto los pronunciamientos que emitió esta curia en *Crespo Quiñones v. Santiago Velázquez*, *supra*. Si de un expediente judicial surge evidencia suficiente de que una parte es insolvente, así debe determinarlo el tribunal como cuestión de derecho, eximiéndole del requisito de fianza de apelación como consecuencia directa. Sin embargo, no enfrentamos aquí el caso de una excónyuge que al momento del divorcio era ama de casa, no generaba ingresos, y que además tenía que sufrir que su excónyuge retuviera arbitraria y caprichosamente mensualidades ya pactadas que constituirían su única fuente de ingresos mientras le niega acceso a bienes como parte de un proceso de liquidación, y que adicional a todo esto enfrentaba el desahucio de la que fuera residencia matrimonial. Todos estos hechos constaban en el expediente

de *Crespo Quiñones*, por lo que no fue controversial reconocer la insolvencia de la demandada a base de la prueba allí vertida, aun cuando el tribunal inferior no lo hizo.

En comparación, en este caso el único elemento que podría sugerir la insolvencia de la peticionaria es la identidad de sus abogados. Como vimos, el resto del expediente demuestra una condición económica contraria a la insolvencia.

Las diferencias entre este caso y *Crespo Quiñones v. Santiago Velázquez*, *supra*, en cuanto a la prueba de insolvencia son marcadas, pero el principio es el mismo: si de las constancias del expediente de un caso surge la condición de insolvencia de una parte, así se debe determinar. No podemos concluir razonablemente que así surja en este caso.

Finalmente, no nos persuade el planteamiento de debido proceso que plantea la peticionaria. Resolver en sentido contrario al propuesto no constituye un atentado contra el debido proceso de ley y la igual protección de las leyes, ni priva a un litigante de su derecho a apelar una sentencia de desahucio. Siempre que exista una determinación de insolvencia, podrá acudir en revisión sin necesidad de prestar fianza.

En ese sentido, una lectura somera de los Artículos 623 y 635 del Código de Enjuiciamiento Civil, según enmendados por la Ley Núm. 6-1980, permite deducir sin mayor dificultad el curso a seguir para quien represente a

un demandado insolvente en un caso de desahucio: informar al tribunal la condición de insolvencia en su primera comparecencia, para así activar los remedios que disponen tanto los citados Artículos 623 y 635 como el *Protocolo para la atención, orientación y referido de personas sin hogar en los tribunales*. Si estos remedios funcionan para partes que solicitan litigar *in forma pauperis* o que son representados por abogados particulares, no es inmediatamente evidente en qué consiste la violación del debido proceso que se señala.

En conclusión, la determinación automática de insolvencia que reclama la peticionaria se basa exclusivamente en la participación de estas entidades sin fines de lucro en su representación. En este caso, más que un acto de fe, se requiere de nosotros ignorar el resto del expediente, del cual surge prístinamente una condición económica distinta a la insolvencia. En el camino, lejos de demostrar que debemos conceder fe ciega a la cualificación de insolvencia hecha en privado por estas entidades, estamos ante una determinación que debe hacerse caso a caso, siguiendo el principio de que "nuestro sistema es uno adversativo de derecho rogado que descansa en la premisa de que las partes, cuidando sus derechos e intereses, son los mejores guardianes de la pureza de los procesos, y de que la verdad siempre aflore". *S.L.G. v. Srio. de Justicia*, 152 D.P.R. 2, 8 (2000).

Por estar convencido de que las determinaciones del foro primario y del apelativo son correctas en cuanto al requisito de fianza en apelación, entiendo que este recurso no debió expedirse. Expedido el mismo, el curso correcto debió ser confirmar la determinación del Tribunal de Apelaciones. Aun así, en ánimo de colegiar esta controversia, estoy conforme con el resultado alcanzado hoy, mediante el cual devolvemos el caso al Tribunal de Primera Instancia para que este determine si las organizaciones que comparecieron en representación de la parte peticionaria cumplen con las disposiciones de la Ley Núm. 81-1964, o pueden beneficiarse de la Ley Núm. 122-1967. Solo reexaminando el alcance de estas leyes ante los hechos de este caso y la capacidad económica de la peticionaria puede determinarse si procedía la imposición de la fianza o no.

RAÚL A. CANDELARIO LÓPEZ
JUEZ ASOCIADO